**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Dawn M. Miller,           ) | |
|               ) | |
|      *Plaintiff,*     ) | |
|               ) | Case No. 12 CV 50440 |
| v.                  ) | |
|               ) | Magistrate Judge Iain D. Johnston |
| Carolyn W. Colvin,[1]    ) | |
| Acting Commissioner of the   ) | |
| Social Security Administration,   ) | |
|               ) | |
|      *Defendant.*    ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Dawn M. Miller, brings this action under 42 U.S.C. § 405(g),

seeking reversal or remand of the decision denying her social security disability

benefits. For the reasons set forth below, the decision is affirmed.

## I. BACKGROUND[2]

On March 5, 2010, Plaintiff filed applications for disability insurance benefits

and supplemental security income, alleging a disability beginning on August 1,

2008. R. 119-24, 151. She was 43 years old at the time of the alleged onset date. R.

151. On October 26, 2011, the Administrative Law Judge ("ALJ") held a hearing to

review the Social Security Administration's denial of Plaintiff's request for benefits.

R. 26-56. The same attorney representing Plaintiff in this action also represented

her at the hearing. Plaintiff and Vocational Expert Jeffery Lucas ("VE") testified at

the hearing.

---

[1] The current Acting Commissioner, Carolyn W. Colvin, has been automatically substituted as the
defendant pursuant to Federal Rule of Civil Procedure 25(d).
[2] The following facts are only an overview of the medical evidence provided in the administrative record.

At the hearing, Plaintiff testified that she received her GED and lived in an apartment by herself since approximately 2008. R. 28-29. She had a car, but stated that she did not drive that often because her son drove her around. R. 28. She would get out of the house two or three times a week to go grocery shopping or to doctors' appointments. R. 29. Plaintiff testified that her work history consisted of making and serving pizzas for about six months in 2008 and working a cashier in 2003. R. 29-30. Plaintiff testified that she was not working at the time of the hearing, and she had not been doing any cleaning work recently. R. 31. When asked about a medical record from September 2011 (R. 750) that indicated Plaintiff worked on the weekends cleaning, Plaintiff testified that she worked for approximately three months cleaning on the weekends, but did not anymore. R. 43-44. Plaintiff testified that she cleaned a small office for approximately 15 minutes one day a week by sweeping, wiping off the counters and emptying the trash. R. 45-46. The ALJ referenced records from April and May 2011 (R. 755-56) that indicated Plaintiff was working and bought a car. R. 43. Plaintiff testified that the car was given to her for cleaning someone's office, and she was paying it off by cleaning. R. 44.

Plaintiff testified that she would not be able to work five days a week for eight hours a day because she had social anxiety disorder, suffered from depression, and had a hard time being around people and dealing with the public. R. 31-32. Plaintiff explained that she would have overwhelming anxiety working around other people and might become emotionally unstable at work. R. 32, 39. Plaintiff

believed she could carry 10 to 20 pounds, but noted that she very seldom finished tasks around the house and noted that her son helped her a lot with household chores. R. 35, 41. Plaintiff testified that she would probably be able to perform a task for about five minutes at a time. R. 36.

Plaintiff testified that she completed an opioid dependence recovery program around April 2011 and had not used illegal drugs for almost three years. R. 36. However, Plaintiff testified that the program did not improve her ability to deal with stress or anxiety. R. 32, 36. In the six months leading up to the hearing, Plaintiff testified that she mostly stayed at home, spent time with her two sons and attended Alcoholics Anonymous ("AA") and Narcotics Anonymous ("NA") meetings on occasion. R. 32, 40-41.

Plaintiff testified that at the time of the hearing, she was taking psychotropic medications, which were monitored by her psychiatrist, Dr. Muhammad Azhar, at Sinnissippi Centers, Inc. and anxiety and opioid dependence medications, which were monitored by her pain management physician, Dr. Richard Ng.[3] R. 34, 37. Plaintiff was also continuing to see a counselor every three months to help deal with her stress and anxiety. R. 34, 37.

The VE testified that Plaintiff's past relevant work as a cashier was unskilled, light work, but sedentary according to Plaintiff's description of her duties. R. 48. Plaintiff's work as a cook and server was semiskilled, light work. R. 48-49. Plaintiff's work as a home health aide was semiskilled and medium work, but

---

[3] As the Commissioner noted in her brief, Dr. Ng has been indicted and his matter is proceeding before this Court. However, as Plaintiff notes, Dr. Ng's indictment is not relevant. Dkt. 22 at 1.

Plaintiff's description to the VE's questions described it as light or sedentary work. R. 49. The ALJ posed the following hypothetical to the VE based on the state agency reviewing physicians' evaluations: a claimant who can perform unskilled work with no exertional limitations, but with work that does not change day-to-day and does not involve public interaction or team coordination. R. 50. The VE opined that the hypothetical person would not be able to perform any past relevant work. However, the claimant could perform the jobs of router of paperwork (DOT 222.587-038), which was unskilled and light with a reasoning level of two and cleaner/housekeeping (DOT 323.687-014), which was unskilled and light with a reasoning level of one and 414,959 jobs nationally and 15,717 locally. R. 51-52. In response to questioning about these two jobs, the VE testified that a person would be able to miss one or two days a month. R. 52. The ALJ also posed that the claimant would not be able to persist with an activity longer than 15 minutes without having a break. R. 53. The VE testified that unscheduled breaks would be allowed, but that leaving the workplace would not be sustainable. R. 53. The VE also testified that the claimant would have to remain alert, productive and meet performance expectations for 90% of the work day. R. 53.

On January 13, 2012, the ALJ issued his ruling finding that Plaintiff was not disabled. R. 10-19. The ALJ found that Plaintiff had multiple severe impairments, including: bipolar disorder, not otherwise specified, opiate dependence in remission, anxiety and cluster B borderline personality traits. R. 13. The ALJ found that Plaintiff's impairments did not meet or medically equal a listing impairment. R. 13-

14. The ALJ considered Listings 12.04, 12.06, 12.08 and 12.09 and found that Plaintiff did not satisfy the paragraph B criteria. *Id.* Additionally, the ALJ found that Plaintiff did not satisfy the paragraph C criteria for listings 12.04 and 12.06. *Id.* The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: no public contact, no team coordination, must work alone and the work must be routine and stay the same from day-to-day. R. 15. Based on the VE's testimony, the ALJ determined that Plaintiff could not do any past relevant work, but had the RFC to perform the job of cleaner/housekeeper. R. 17-18.

## II. LEGAL STANDARDS

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial

evidence).  If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter.  *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).  Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision.  *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008).  Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion.  *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

## III. DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed or remanded for two reasons.  She argues that the ALJ erred by: 1) not having a mental health expert testify at the hearing; and 2) failing to include moderate limitations in concentration, persistence or pace in the hypothetical provided to the VE.

### A. Mental Health Expert

Plaintiff notes that the ALJ failed to order a mental health consultation examination and argues that the failure to have a mental health expert present at the administrative hearing "inextricably links to the ALJ[']s failure to give proper controlling weight to [Plaintiff's] treating psychologist, [Dr. Azhar,] thereby invading the medical province in making his determination of whether the Plaintiff met the Listings[.]"  Dkt. 13 at 5.

Plaintiff provides very little support for this argument.  In her reply, Plaintiff makes the conclusory allegation that based on the evidence in the record, the ALJ

was required to "counter the treating psychiatrist's residual functional capacity form with something more than a reduced (in severity) set of limitations[.]"  Dkt. 22 at 2.  She mainly quotes from Dr. Azhar's opinions and cites to all of her treatment records from Sinnissippi Center, Inc., but does not provide any explanation as to how these records support her argument that the ALJ invaded the medical province or improperly assessed Dr. Azhar's opinions.  Regardless, the Court finds these arguments to be without merit.

First, the ALJ properly discounted Dr. Azhar's opinions.  A treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2); *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014).  If an ALJ does not give a treating physician's opinion controlling weight, he must determine what specific weight, if any, the opinions should be given after analyzing the checklist of factors set forth in the Social Security regulations.  20 C.F.R. § 404.1527(c)(2); *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010).[4]  However, an ALJ's decision "need only include good reasons for the weight given to the treating source's opinion rather than an exhaustive factor-by-factor analysis."  *McCormick v. Astrue*, No. 1:11-CV-00328, 2012 WL 1886508, at *12 (N.D. Ind. May 23, 2012) (internal quotation marks and citations omitted).

---

[4] The factors are: (1) length of treatment; (2) the nature and extend of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6).

Here, the ALJ clearly explained that he did not give controlling weight to Dr. Azhar's opinions from September and November 2011 because they were based upon an unreliable historian and were inconsistent with Dr. Azhar's recent GAF score of 54 (R. 742). R. 17. The ALJ then considered the checklist factors and determined that he would afford the opinions "very limited weight" because they were formulated early in Plaintiff's recovery and did not reflect longitudinal relevance. The ALJ also found the opinions inconsistent with Plaintiff's work activity described in the medical records and Dr. Azhar's GAF rating in August 2011. R. 17. Furthermore, the ALJ expressed skepticism about Dr. Azhar reliance on Plaintiff's subjective complaints in assessing her limitations, previously noting that Plaintiff was not forthcoming about some of her activities and that the medical records contradicted some of her alleged limitations. R. 16-17. For instance, Plaintiff claimed that her son had to drive her around, but she specifically bought a car in April 2011. R. 16, 28, 755-56. Additionally, Plaintiff claimed that she did not socialize, but testified that she attended AA and NA meetings for an hour at a time and visited with her two sons. R. 40-41.

In his RFC determination, the ALJ also noted that once Plaintiff adhered to her therapy and medications, she was able to achieve sobriety and had steady functional improvement, which contravened Dr. Azhar's determination that Plaintiff had marked impairments in functioning. R. 16. Dr. Azhar's opinions even noted Plaintiff's improvement based on the GAF score of 45 in September 2010 and a GAF of 55 in November 2010. R. 397, 662. The ALJ reviewed all of the medical

evidence, including the opinions of Plaintiff's treating physician, and provided detailed reasons, supported by substantial evidence, why he was giving more weight to the consulting physician's opinion.

Second, based on this Court's review of the record, it finds that the ALJ was not obligated to order a mental health consultative examination or call a mental health expert. "The ALJ is not *required* to order a [consultative examination], but may do so if an applicant's medical evidence about a claimed impairment is insufficient." *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007) (emphasis in original) (citing 20 C.F.R. §§ 416.912(f), 416.917). Additionally, an ALJ's decision regarding whether a medical expert is necessary is inherently discretionary. *See* 20 C.F.R. § 404.1527(e)(2)(iii) (stating that an ALJ may, but is not required to, seek the opinion of a medical expert.").

Here, the ALJ rejected two opinions from Dr. Azhar and instead relied on the state agency reviewing psychologist's opinions to evaluate the evidence and determine that Plaintiff was not disabled. Despite this, Plaintiff continues to rely on Dr. Azhar's assessments to dispute the ALJ's findings regarding the Listings and her RFC. Plaintiff, however, fails to even acknowledge that the ALJ rejected Dr. Azhar's opinions or that he relied on the state agency review psychologist's Psychiatric Review Technique form (R. 374-87) and Mental RFC (R. 388-91). Plaintiff further fails to explain how the ALJ's findings were flawed.

The ALJ relied on the state agency RFC, which found Plaintiff not significantly limited in the majority of social and occupational functioning. R. 388-

89.  The ALJ also reviewed Plaintiff's testimony and numerous treatment notes from Plaintiff's other treating physician, Dr. Ng.  R. 15-17.  Thus, rejecting Dr. Azhar's opinions alone did not require the ALJ to call a medical expert because he evaluated Plaintiff's disability based on the testimony and medical evidence in the record.  *See Bollas v. Astrue*, 694 F. Supp. 2d 978, 993 (N.D. Ill. 2010) ("While testimony from a mental health expert might have provided additional guidance to the ALJ, given all of the current, reliable evidence in the record, the ALJ had a wealth of medical evidence from which to reasonably assess Claimant's mental RFC without further development with testimony from a mental health expert.").

Similarly, Plaintiff has failed to show that the ALJ invaded the medical province by rejecting Dr. Azhar's opinions.  The ALJ did not improperly substitute his judgment for that of a medical doctor because in relying on the remaining medical records and the opinions of the state agency reviewing physician, there was no evidentiary deficit.  *Cf. Suide v. Astrue*, 371 Fed. App'x 684, 690 (7th Cir. 2010) (remanding where the ALJ rejected the opinions from the treating physicians and was left with an "evidentiary deficit" that the ALJ filled with his own lay opinion of the RFC); *Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996) (remanding where the ALJ rejected a treating physician's opinions despite the absence of any inconsistent evidence).  Although Plaintiff correctly notes that mental impairments tend to fluctuate, this alone does not require a mental health expert.  *See* SSR 96-7p (advising that a claimant's symptoms may fluctuate over time); *Fuchs v. Astrue*, 873 F. Supp. 2d 959, 971 (N.D. Ill. 2012) ("Mental illnesses are episodic by nature.").

The ALJ reviewed all the substantial evidence in the record and acknowledged that Plaintiff had some bad days, but overall Plaintiff was improving and stable, (R. 742). R. 16 (showing that the ALJ explicitly reviewed Plaintiff's most recent treatment records from August 2010 through September 2011); *see Sutherlin v. Colvin*, No. 1:13-cv-01603-SEB-DKL, 2015 WL 1046101, \*5 (S.D. Ind. March 10, 2015) (no error in not calling medical expert because ALJ could properly rely on two state-agency psychologists and because the plaintiff failed to meet his burden of showing why an expert was needed); *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (the ALJ may rely on reports of state agency physicians to "conclusively establish" that claimant did not meet a listing requirement). The ALJ's decision is supported by substantial evidence because the record presented shows consistent evidence of Plaintiff's stability. *See, e.g.*, R. 583-92.

Plaintiff contends that the ALJ "cherry picked" medical records to support the determination. However, it is Plaintiff who is cherry picking. Plaintiff completely ignores the subsequent medical records that refute her argument. If an ALJ may not cherry pick medical records in an attempt to highlight only the "good days," then a claimant cannot cherry pick medical records to only highlight the bad days. At the risk of mixing metaphors, the anti-cherry picking rule is subject to the goose-and-gander rule: If the ALJ cannot cherry pick, then neither can the claimant.

In her reply, Plaintiff make the conclusory allegation that a mental health expert was needed due to the long period of time between the alleged onset date,

August 1, 2008, and the date of the administrative hearing, October 26, 2011. Dkt. 13 at 5-8; Dkt. 22 at 2. However, Plaintiff cites no legal authority for this argument and the Court has found nothing that would require an ALJ to call a medical expert based solely on the lapse of time between the alleged onset date and the administrative hearing. *See Jarrard v. CDI Telecomm., Inc.*, 408 F.3d 905, 916 (7th Cir. 2005) (perfunctory and undeveloped arguments that are unsupported by pertinent authority are forfeited on appeal).

Furthermore, a broad and unspecified claim that medical testimony was required is generally not persuasive, especially in this case where Plaintiff was represented by counsel at the hearing and made no attempt to obtain expert testimony. Plaintiff and the ALJ do share responsibilities for building the record, but it is Plaintiff's burden to submit medical evidence to prove her disability. *See Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (claimant has burden in steps one through four). Where a claimant is represented by counsel at the hearing, the Seventh Circuit permits the ALJ to assume the claimant is making her strongest case for benefits. *See Wilkins v. Barnhart*, 69 F. App'x 775, 781 (7th Cir. 2003); *see also Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007) (particularly in counseled cases, the claimant bears the burden to introduce objective evidence that the ALJ should have developed the record further). Counsel should not sit silently at a hearing, fingers crossed, hoping for an ALJ error. Instead, they should zealously advocate for their clients. In doing so, counsel should identify alleged errors to the ALJ so that if an error truly occurred, the ALJ can promptly rectify the

error.  Waiting years to raise an alleged error on appeal does not further an applicant's interest.  Accordingly, this Court cannot conclude that the ALJ abused his discretion in not ordering a consultative examination or calling a medical expert to testify at the hearing.

## B. Adequacy of Hypothetical Question to the VE

In his RFC determination, the ALJ found that Plaintiff was able to perform a full range of work at all exertional levels, but with the following nonexertional limitations: no public contact, no team coordination, must work alone and the work must be routine and stay the same from day-to-day.  R. 15.  In determining this RFC, the ALJ specifically accommodated for Plaintiff's anxiety when around other people and also relied on the assessments of the state agency reviewing psychologist.  R. 15-17.  In the mental RFC determination, the state psychologist found that Plaintiff was not significantly limited in the majority of her social and occupational functioning, but was moderately limited in her ability to remember and carry out detailed instructions and interact appropriately with the general public.  R. 388-89.  The state psychologist noted that Plaintiff's treating psychiatric notes showed improvement in mood, inattention and behavioral symptoms and opined that Plaintiff had the "ability to sustain concentration, persistence and pace to perform routine one and two step tasks in a work setting[,]" but should not be required to deal with the public.  R. 390.

Based on this opinion and the medical evidence in the record, the ALJ offered a hypothetical to the VE that limited the individual to unskilled work with no

exertional limitations, but with work that does not change day-to-day and does not involve public interaction or team coordination. R. 50. In light of these restrictions, the VE opined that the claimant could perform the jobs of router of paperwork (DOT 222.587-038), which was unskilled and light with a reasoning level of two and cleaner/housekeeping (DOT 323.687-014), which was unskilled and light with a reasoning level of one. In his opinion, the ALJ concluded that Plaintiff had the RFC to perform the job of cleaner/housekeeper.

Plaintiff argues that the ALJ erred by failing to include moderate limitations in concentration, persistence or pace in the hypothetical provided to the VE. The Court is not persuaded by this argument.

In making this argument, Plaintiff relies on *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), where the Seventh Circuit held that, "[i]n most cases, [ ] employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present *significant* problems of concentration, persistence and pace." *Id.* (emphasis added). In support of her argument, Plaintiff states "[h]ere the medical expert testifying at the hearing agreed that there were 'moderate' difficulties in sustaining communication; persistence or pace. The ALJ did not include these limitation [sic] in his hypothetical to the vocational expert." Dkt. 13 at 9.

While Plaintiff's recitation of the *O'Connor-Spinner* ruling is accurate, it is unclear exactly what "medical expert" Plaintiff is referring to here and how the *O'Connor-Spinner* doctrine is applicable to this case. As discussed above, there was

no medical expert that testified at the hearing. Indeed, as discussed previously, Plaintiff's initial argument was that the ALJ erred in *not* having a physician testify. Even if Plaintiff mistakenly referred to the state psychologist as the "medical expert," this also does not support her argument. The state psychologist found that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace (R. 384), however, in her RFC determination, she explained that Plaintiff had the ability to sustain concentration, persistence and pace to perform routine one and two-step tasks in a work setting that did not require public interaction (R. 390). The ALJ relied on this when determining at step four that Plaintiff "impairments in combination still afford substantial measures of adaptive reserve, involving only moderate restriction of social and occupational functioning." R. 17. Thus, the ALJ did not find the same "significant problems" in concentration, persistence or pace that were addressed in *O'Connor-Spinner*.

Accordingly, the hypothetical to the VE limited the claimant to jobs that required no public contact, no team coordination, work that is routine and stays the same from day-to-day, and the ability to work alone. While the hypothetical did not explicitly include limits on concentration, persistence or pace or a specific reference to one or two-step tasks, this does not require remand.

The ALJ determined that Plaintiff had the RFC to perform the position of cleaner/housekeeper (DOT 323.687-014), which was identified by the VE. This position has a reasoning level of one, which the Dictionary of Occupational Titles defines as the ability to "[a]pply commonsense understanding to carry out simple

one- or two-step instructions."  DICOT, App'x. C - Components of the Definition

Trailer, 1991 WL 688702 (G.P.O); *see also Pomilia v. Astrue*, No. 2:11-CV-15, 2012

WL 691628 (N.D. Ind. March 2, 2012) (finding one- to two-step tasks consistent with

reasoning level one).  With the ALJ's added restriction that Plaintiff could not deal

with the public and needed to work alone, a job with reasoning level one was

precisely what the state psychologist determined Plaintiff had the concentration,

persistence and pace to perform.  *See* R. 390.  Thus, there is no conflict between

Plaintiff's capabilities and the job the VE and the ALJ determined Plaintiff could

perform.  *See O'Connor-Spinner*, 627 F.3d at 619 (explaining that there is no "per se

requirement" that the specific terminology of concentration, persistence and pace be

used in the hypothetical, as long as the ALJ's alternative phrasing specifically

excluded those tasks that someone with the claimant's limitations would be unable

to perform."); *see also Arnold v. Barnhart*, 473 F.3d 816, 820-23 (7th Cir. 2007)

(upholding a hypothetical that omitted the specific language of concentration,

persistence, or pace, but included language that restricted the applicant to low-

stress, low-production work because the applicant's limitations in concentration,

persistence, and pace arose from stressed-induced headaches, frustration, and

anger).  Accordingly, this Court finds that remand is not warranted on these

grounds.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment (Dkt. 13) is denied, and the Commissioner's motion (Dkt. 21) is granted. The decision of the ALJ is affirmed.

Date: April 27, 2015         By: _____

                                   Iain D. Johnston
                                   United States Magistrate Judge